**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK GOLDBERG,<br><br>  Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>  Defendants. | Civil Action No. 17-6024 (KMW) (SAK)<br><br>**OPINION** |

**WILLIAMS,** District Judge:

This matter comes before the Court on Defendants' motion to dismiss Plaintiff's amended complaint in this prisoner civil rights matter. (ECF No. 74.) Plaintiff filed a response to the motion (ECF No. 79), to which Defendants replied. (ECF No. 80.) For the reasons set forth below, Defendants' motion shall be granted, and Plaintiff's amended complaint (ECF No. 69) shall be dismissed.

**I.    BACKGROUND**

At the time the events which give rise to his complaint occurred, Plaintiff was a federal prisoner confined to the minimum-security satellite camp at FCI Fort Dix. (ECF No. 69 at 4.) Plaintiff's claims chiefly concern the termination of his parental rights over his handicapped son, in New York state court . (*Id.* at 4-10.) Plaintiff's son was born in 2010. (*Id.* at 4.) Following his mother's suffering mental health and substance abuse issues,[1] New York state officials removed Plaintiff's son from the care of his mother and placed him in foster care in 2011. (*Id.*) Although

---

[1] Plaintiff's wife eventually passed away in October 2015. (ECF No. 69 at 5.)

Plaintiff sought to take steps to reconnect with his son in the hopes of regaining custody of him, those attempts were derailed when Plaintiff was indicted on fraud and tax charges in 2012. (*Id.*). Plaintiff pled guilty to those charges in 2013, and was sentenced to fifty-seven months' imprisonment in 2014. (*Id.*) Plaintiff's sentence commenced on October 1, 2015. (*Id.*)

In March 2015, the organization that had foster custody of Plaintiff's son filed a petition to terminate Plaintiff's parental rights. (*Id.* at 5.) Plaintiff was represented by counsel in the ensuing termination proceedings, who secured an order of the state court permitting Plaintiff to appear at those hearings telephonically in light of his incarceration. (*Id.*) Although Plaintiff was initially placed on the prison's call out list so that he could call into a hearing in January 2016, that initial hearing was rescheduled. (*Id.* at 6.) Following the rescheduling of that hearing, Plaintiff contends that Defendants, in various ways indicative of either indifference, negligence, or animus, interfered with his ability to attend various hearings and conferences telephonically, resulting in his inability to participate in the termination proceedings. (*Id.* at 6-10.) Plaintiff's counsel, however, apparently did attend all hearings and cross-examine the relative witnesses involved. (*Id.*) Regardless, Plaintiff's parental rights over his son were ultimately terminated by court order in September 2017. (*Id.* at 10.)

Plaintiff therefore seeks to bring claims against Defendants under the First and Fifth Amendments, via *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for claims asserting that they denied him access to the courts and his rights to Due Process, as well as a civil conspiracy claim. Defendants now move to dismiss those claims, arguing that Plaintiff has failed to adequately plead a conspiracy, that they are entitled to qualified immunity, and that this Court should not extend the *Bivens* remedy to cover claims such as these in light of the Supreme Court's decision in *Ziglar v. Abbasi*, --- U.S. ---, 137 S. Ct. 1843 (2017).

2

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* "Determining whether the allegations in a complaint are plausible is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

In their motion to dismiss, Defendants chiefly argue that this Court should decline to extend *Bivens* to cover Plaintiff's claims and dismiss those claims as a result. In *Bivens*, the Supreme

3

Court recognized an implied cause of action for those whose rights were violated by those acting under color of federal law, creating a functional analogue to a federal civil rights claim under 42 U.S.C. § 1983. *See Ziglar*, 137 S. Ct. at 1854. Although the Supreme Court did recognize that this implied cause of action went beyond merely the factual context of *Bivens* itself, *see Davis v. Passman*, 442 U.S. 228 (1979) (finding *Bivens* cause of action for Congressional staffer subjected to sex discrimination); *Carlson v. Green*, 446 U.S. 14 (1980) (finding *Bivens* cause of action for inadequate prison medical treatment), because this cause of action was judicially created and not based on explicit statutory authority, the Supreme Court frequently advised caution in further extending that cause of action. *See Ziglar*, 137 S. Ct. at 1855. Indeed, the Supreme Court found further extension to be a disfavored judicial activity. *See Iqbal*, 556 U.S. at 675. The Court has therefore on multiple occasions declined to expand *Bivens* to cover a number of claims such as a First Amendment suit against a federal employer, military race discrimination suits, substantive due process claims against military officers, and procedural due process claims in various context. *Ziglar*, 137 S. Ct. at 1857 (collecting cases).

In *Ziglar*, the Supreme Court clarified that *Bivens* should not be extended to "any new context" if there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* (internal quotations omitted). As the Supreme Court explained, the "proper test for determining whether a case presents a new *Bivens* context is as follows. If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], then the context is new." *Id.* at 1859. A case may still be a "new" context even where the type of legal claim or constitutional violation is quite similar to a previous case – the Court observed meaningful differences could include the rank of the government agents involved, the constitutional right at issue, the generality or specificity of the official action in question, the extent to which federal officers have judicial guidance on how to respond to the issue at hand, the statutory or legal

4

framework guiding the officer's conduct of his duties, the disruptive risk posed by the judiciary expanding its authority into the province of the legislature or federal executive branch, or the presence of other special factors. *Id.* at 1859-60. Thus, a court must determine whether special factors counsel against expanding *Bivens* any time a case is meaningfully different in any of these or similar ways from any of the three contexts in which the Supreme Court has found a *Bivens* cause of action in the past: a Fourth Amendment search and seizure case involving federal drug enforcement issues, a sex discrimination case against a congressman, and a case involving inadequate medical care being provided to a prisoner. *Id.* at 1860.

In determining whether special factors counsel hesitation in extending *Bivens*, Courts may consider any number of factors, but there are two chiefly to consider: "the existence of an alternative remedial structure and separation-of-powers principles." *Bistrian v. Levi*, 912 F.3d 79, 90 (3d Cir. 2018) (citing *Ziglar*, 137 S. Ct. 1857-58). Where an alternate structure is available, that alone may prevent judicial expansion of *Bivens*, but where there are separation of powers concerns, that must be central to any special factors analysis. *Id.* Other factors which may be considered include the financial and administrative cost to the government of recognizing a private cause of action and whether the judiciary is well suited to weigh those costs, the necessity to deter future violations, whether Congress has already taken action in a related context indicating that judicial "interference" is unwarranted, whether a claim impugns or otherwise calls into question executive policy questions, whether national security is involved, and whether litigation would intrude on the function of the executive or legislative branches. *Id.*

In this matter, Plaintiff wishes to raise two classes of claims under *Bivens* – a denial of access to the Courts claim under the First and Fifth Amendment and a Fifth Amendment Due Process claim, buttressed by a conspiracy claim tying the Defendants to alleged wrongs of the other Defendants. Despite Plaintiff's protestations to the contrary, most of which are based on

5

pre-*Ziglar* Third Circuit cases which cannot, in and of themselves, establish a non-novel context for a *Bivens* claim, *see Bistrian*, 912 F.3d at 95-96 (*Ziglar* set Supreme Court precedent, and not lower-court decisions as guide post for what is or is not a new context); *see also Vanderklok v. United States*, 868 F.3d 189, 199-200 (3d Cir. 2017) ("[o]ur past pronouncements are thus not controlling" in a *Ziglar* "new context" analysis), it is clear that Plaintiff's claims present a novel context as they are quite dissimilar to the few *Bivens* contexts recognized by the Supreme Court. Indeed, as the Court of Appeals explained in *Bistrian*, the Supreme Court has never extended *Bivens* to cover a First Amendment claim, and post-*Ziglar*, most, if not all, courts to consider the issue have declined to extend *Bivens* into the First Amendment context, be it based on denial of access to the courts, retaliation, or any other issue. *Id.* at 95-96. Likewise, although the Supreme Court did recognize a Fifth Amendment claim in one *Bivens* case, that claim was related to a sex discrimination case, and was wholly dissimilar to a claim asserting a denial of due process in a separate family court matter where the plaintiff was represented by counsel. *Id.* at 94; *see also Ziglar*, 137 S. Ct. at 1859-60. Indeed, the Supreme Court has on several occasions declined to extend *Bivens* into other contexts raising either substantive or procedural due process claims, and the Third Circuit has likewise declined in the few post-*Bivens* cases presenting species of due process complaints. *Ziglar*, 137 S. Ct. at 1857; *Bistrian*, 912 F.3d at 94-95.

As it is clear, then, that Plaintiff's claims present a new *Bivens* context, this Court must consider whether special factors are present which caution against expanding the *Bivens* remedy. If there are any special factors present which would "cause a court to hesitate" before affirmatively finding that this Court is well suited to permit a new cause of action in the absence of Congressional guidance, this Court must not extend the *Bivens* remedy and must dismiss Plaintiff's complaint. *Ziglar*, 137 S. Ct. at 1857-58. This Court finds that such special factors exist in this case. First, the Court notes that, contrary to Plaintiff's assertions, he did have alternative mechanisms through

6

which to seek relief to abate the alleged violation in this matter – his inability to access his state court parental termination proceedings. At a minimum, Plaintiff could have, through his attorney, sought a court order or other injunctive relief from either the family court or a federal court while his termination proceedings were ongoing to compel the prison to permit him telephone access on the relevant dates. Likewise, Plaintiff could have made timely use of the prison administrative grievance process to secure telephonic access to his state court proceedings, but he instead did not seek such relief until July 2017, eighteen months after the first alleged obstruction, at which point his claims were not timely under administrative grievance rules. (*See* ECF No. 69 at 9-10.) That Plaintiff's delay may have prevented him from adequately making use of this alternative procedure does not change the ultimate fact that he could have, but did not, file a timely administrative grievance to address his issues *before* his parental rights termination proceedings had nearly concluded. The fact that these alternative methods for addressing the alleged constitutional violations were available cautions against an expansion of *Bivens*. *See, e.g., Ziglar*, 137 S. Ct. 1862-63, 1875 (injunctive relief, where available, can be sufficient alternative process to alleviate need for *Bivens* extension); *Mack v. Yost*, 968 F.3d 311, 321 (3d Cir. 2020) (availability of redress through administrative prison remedy "offers a convincing reason . . . to refrain from creating a new damages remedy against federal prison officials").

There are several additional factors which also cause this Court to hesitate to expand *Bivens*. First, expanding *Bivens* in this context – the interference with a prisoner's access to non-criminal or prisoner civil rights proceedings even where he already has counsel in that case – has the potential to cause the Government to incur substantial administrative and financial costs in preparing for and defending future suits. Though this factor is not alone dispositive, it is certainly one which this Court should consider. *Mack*, 968 F.3d at 324-25. This case, in particular, also has the potential to implicate comity concerns insomuch as a finding in Plaintiff's favor would, at the

7

very least, cast some doubt on completed state court proceedings and would involve at least some review of the propriety of state court family proceedings in Plaintiff's absence. All of these special factors – governmental cost concerns, comity, and the availability of alternative remedial process through the state court or a timely administrative grievance – give this Court pause, and militates against extending the *Bivens* cause of action into this context. As such, this Court must decline to extend the *Bivens* remedy without clear legislative guidance, and Plaintiff's amended complaint must be dismissed as a result. *Ziglar*, 137 S. Ct. 1857-58, 1863. Defendants' motion shall therefore be granted.[2]

## IV.  CONCLUSION

In conclusion, Defendants' motion (ECF No. 74) is **GRANTED**, and Plaintiff's amended complaint (ECF No. 69) is **DISMISSED**. An appropriate order follows.

Hon. Karen M. Williams,
United States District Judge

---

[2] Although the Court need not reach the issue in light of its conclusion that the *Bivens* remedy should not be extended into this new context at this time, the Court further notes that Defendants are likely entitled to qualified immunity in this matter in any event as it has not been clearly established that prisoners have a right of personal, telephonic access to family court matters in which they are represented by counsel. *See, e.g., Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637-40 (3d Cir. 2015) (civil rights defendant entitled to qualified immunity where the alleged constitutional violation is not "clearly established" by Supreme Court precedent or robust consensus of appellate precedent); *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (convicted prisoners may pursue an access to courts related claim only involving cases involving direct or collateral challenges to their criminal conviction or in prisoner civil rights matters). While the Third Circuit has *suggested* that a prisoner's access to the courts claim may be viable where it involves the termination of an individuals' fundamental parental rights, *see, e.g., Ball v. Hartman*, 396 F. App'x 823, 825 (3d Cir. 2010), there is no clear body of law *holding* that such a claim is certainly viable, especially in cases where the plaintiff was *represented by counsel* in those proceedings. This lack of clear binding precedent suggesting such a viable claim, would likely require that this Court find an entitlement to qualified immunity in this case even if *Ziglar* did not counsel against an extension of the *Bivens* remedy.

8